[Dkt. No. 13]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

ANNA BARAN,

        Plaintiff,

  v.

ASRC FEDERAL MISSION SOLUTIONS, ROSE WELLS, FRANCES McKENNA, SUE GOLDBERG, and ABC BUSINESS ENTITIES 1-100,

        Defendants.

Civil No. 17-7425(RMB/JS)

**OPINION**

APPEARANCES:

Latonya N. Bland-Tull, Esq.
HAGERTY & BLAND-TULL LAW, LLC
Moorestown Times Square
523 Haddon Avenue
Collingswood, NJ 08108
    *Counsel for Plaintiff*

Alexa Joy Laborda Nelson, Esq.
LITTLER MENDELSON PC
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
-and-
William J. Leahy, Esq.
LITTLER MENDELSON, PC
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
    *Counsel for Defendants*

**BUMB**, United States District Judge:

This matter comes before the Court upon the filing of a motion to remand this matter to the Superior Court of New Jersey, Camden County and for payment of costs and attorney's fees, by Plaintiff Anna Baran (the "Plaintiff"). For the reasons stated below, Plaintiff's motion will be DENIED.[1]

## I. Factual and Procedural Background

Plaintiff Anna Baran is a former employee of Defendant Mission Solutions, LLC ("MSE")(incorrectly pled as ASRC Federal Mission Solutions), a defense contractor that supplies systems engineering, software engineering, integration services and products for mission-critical defense systems. Am. Compl. ¶ 3, Notice of Removal, Ex. C. This action arises from Plaintiff's termination from MSE in 2013 as the result of threatening comments Plaintiff allegedly made to Rose Wells, a software engineer manager at MSE. Wells reported both to the police and to Francis McKenna, a member of MSE security, that Plaintiff had threatened to bring a gun to work and shoot certain MSE employees. In addition to her unlawful termination, Plaintiff alleges, McKenna continued to disparage Plaintiff to potential employers, preventing her from finding new full-time employment

---

[1] Because the Court denies Plaintiff's motion to remand on the merits, it will also deny, without addressing, Plaintiff's motion for costs and attorneys fees.

2

by indicating to such employers that a "false report" placed on Plaintiff's "clearance record was true, that it was bad, and that [P]laintiff . . . [would] not be able to obtain clearance based on that report." Am. Compl. ¶ 43. As it turns out, the "report" which McKenna was discussing was entered into the United States Department of Defense's ("DOD") Joint Personnel Adjudication System ("JPAS"), which functions as the DOD's system of record for security clearance processing.

This case comes to the Court under somewhat unusual procedural circumstances. It had been pending in state court for almost three years and was set for a trial when MSE removed it pursuant to 28 U.S.C. § 1442 (the "Federal Officer Removal Statute"). At issue is whether MSE is entitled to the benefit of that statute and, if so, at what point in the state court proceedings it could ascertain that the statute applied. Specifically, the resolution of this motion turns on the date that MSE could first have ascertained that Plaintiff was bringing a defamation claim against it not only on the basis of comments made by McKenna or other unnamed MSE employees, but based on the report entered into JPAS.

On January 6, 2015, Plaintiff initiated this action by filing a pro se Complaint against MSE and Wells in the Superior Court of New Jersey, Law Division, Burlington County (Docket No. L-53-15). Plaintiff's initial pro se Complaint was vague and the

3

details included therein were sparse, but it appears that Plaintiff alleged that Wells had made false statements concerning Plaintiff's intention to "harm others" with firearms, costing Plaintiff her job. See Jan. 6, 2015 Compl., Notice of Removal Ex. A.  Plaintiff brought claims for (1) negligence; (2) malicious prosecution; (3) intentional and negligent infliction of emotional distress; (4) defamation and slander; (5) tortious interference; and (6) retaliation. See id.

Plaintiff's pro se Complaint was dismissed, without prejudice, on April 24, 2015, subject to three conditions: (1) Plaintiff was required to obtain counsel by July 1, 2015, "with the understanding that she may have a claim for unlawful termination"; (2) MSE was required to "issue a neutral employment reference"; and (3) MSE was required to "use best efforts to assist Plaintiff in obtaining a security clearance, to the extent possible." Notice of Removal ¶ 3, Ex. B.

On June 27, 2015, while the case was still dismissed, Plaintiff sent a letter to the state court informing the court that Plaintiff was having a difficult time obtaining counsel. June 27, 2015 Letter, Certification of LaTonya Bland-Tull, Ex. C. In her letter, Plaintiff also indicated that she had "objective evidence that . . . [MSE] continue[d] to slander" her. Id. Specifically, she claimed that she lost two job opportunities because the company "verbally slander[ed]" her and

4

"put false information on . . . [her] career record." Id. She claimed to have spoken to McKenna, who told her that "he would correct the statement but then backed out of the system because he realized that it would make the company legally liable." Id.

The state court treated Plaintiff's pro se letter as a motion to enforce the conditions in the court's April 24, 2015 dismissal order. On August 12, 2015, it granted Plaintiff's request and ordered MSE's HR Department to issue Plaintiff a "neutral employment reference," without editorialization; provide neutral information if contacted about Plaintiff's future attempts to obtain a security clearance; and provide Plaintiff with a copy of her "entire personnel file." Order Granting Plaintiff's Motion to Enforce, Certification of LaTonya Bland-Tull, Ex. D.

On October 6, 2016, the state court reinstated Plaintiff's Complaint and granted her leave to file an amended complaint. October 18, 2016, having obtained counsel, Plaintiff filed an Amended Complaint against MSE, Wells, McKenna, Sue Goldberg, who at one time was Plaintiff's supervisor at MSE, and "ABC Business Entities 1-100." See Notice of Removal, Ex. C. Two of the four counts in Plaintiff's Amended Complaint are relevant to this motion: (1) Count One for defamation, libel, and slander, and (2) Count Two for defamation, libel, and slander per se. In

these Counts, Plaintiff alleges that McKenna[2], or another unnamed MSE employee, made slanderous statements about Plaintiff and about the nature of reports filed on Plaintiff's "record." Specifically, Plaintiff alleges that McKenna or another MSE employee spoke by phone with employees from L-3 Communications, and that as a result of statements made about Plaintiff during those conversations, L-3 refused to hire Plaintiff.

On February 10, 2017, Defendants sent their first set of interrogatories to Plaintiff. Interrogatory number 10 asked Plaintiff to identify "each communication that . . . [she] contend[ed] support[ed] . . . [her] claim(s) for defamation." For each of these communications, interrogatory 10 asked Plaintiff to identify (1) who made the statement; (2) when the statement was made; (3) to whom the statement was communicated; and (4) any witnesses to the communication. On March 6, 2017, however, the state court dismissed Plaintiff's defamation, libel, and slander (including defamation, libel, and slander <u>per se</u>) claims as untimely. The state court's dismissal was without prejudice, and the court granted Plaintiff leave to amend. Plaintiff did not, however, amend her Amended Complaint.

---

[2] It does not appear that Plaintiff ever served McKenna with process.

On April 28, 2017, Plaintiff submitted her responses to Defendant's first set of interrogatories. In response to interrogatory number 10, Plaintiff provided:

> McKenna admitted that in August 2014, he represented to employees of L3 Communications that Plaintiff had threatened someone at work. McKenna admitted that he discussed a report that he created in JPAS database with L3 Communications. This report alleged that Plaintiff owns firearms.

See Pl.'s Answer to Interrogatories, Interr. 10, Cert. of LaTonya Bland-Tull, Esq., Ex. H. By this time, all of Plaintiff's defamation claims had been dismissed and the matter appeared to be moving forward as one for retaliation under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(d) ("NJLAD").

On September 8, 2017, the state court held oral argument on a motion for summary judgment filed by Wells seeking the dismissal of the NJLAD claim against her and a motion filed by Plaintiff seeking reconsideration of the dismissal of her defamation claims. At oral argument, the court granted Wells' motion for summary judgment, dismissing Wells from the case.

More relevant here, the court also granted Plaintiff's motion for reconsideration, restoring her defamation claims. As the state court's dismissal was based on the timeliness of those claims, the court inquired into the dates of the communications on which Plaintiff's defamation allegations are based. In

7

response to a question from the court, MSE's counsel indicated that it was MSE's belief that Plaintiff's defamation claims were premised entirely on McKenna's communication with Plaintiff's prospective employer, L3. Tr. Of Sep. 8, 2017 Oral Arg. 12:20-24, Notice of Removal Ex. E.  Notably, Plaintiff's counsel disputed that characterization, arguing that Plaintiff's defamation claims were based, in part, on McKenna's conversation with L3, but were also based on two JPAS entries related to Plaintiff; one in January of 2013 and one in May of 2014. Plaintiff further argued that she did not discover these JPAS entries until being alerted to them by L3 in August of 2014. The state court granted Plaintiff's motion for reconsideration and ruled that Plaintiff's defamation claims could proceed to trial. Because Defendant had prepared only for a NJLAD trial, however, the court granted it additional time to conduct depositions of witnesses concerning Plaintiff's defamation claims.

On September 25, 2017, MSE removed the action to this Court pursuant to 28 U.S.C. § 1442. After the parties submitted pre-motion letters in accordance with this Court's Individual Rules and Procedures, Plaintiff timely filed the presently pending motion for remand on November 8, 2017, arguing that removal was improper and untimely.

**II. Discussion**

The Court will first address whether Defendant's removal of this case was proper, before turning to the issue of whether that removal was timely.

    A. <u>Defendant's Removal of this Action was Proper</u>

As noted above, MSE removed this case to federal court pursuant to 28 U.S.C. § 1442, the "Federal Officer Removal Statute," which provides in relevant part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

28 U.S.C. § 1442(a)(1).

This statute exists to "protect[] officers of the federal government," and those acting under them, "from interference by litigation in state court while those officers [and those under their charge] are trying to carry out their duties." <u>Papp v. Fore-Kast Sales Co.</u>, 842 F.3d 805, 811 (3d Cir. 2016)(citing <u>Willingham v. Morgan</u>, 395 U.S. 402, 405-06 (1969)); see also <u>Watson v. Philip Morris Companies, Inc.</u>, 551 U.S. 142, 152 (2007) (citations omitted)(describing purpose of Federal Officer

9

Removal Statute as including providing a federal forum in which to hear federal immunity defenses). "Section 1442(a) is an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." Id. (quoting Kircher v. Putnam Funds Trust, 547 U.S. 633, 644 n.12 (2006) (internal quotation marks and citation omitted)). In accordance with the important purposes it serves, "[u]nlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum." Id. at 811-12 (citations omitted).

The party removing an action to federal court bears the burden of proving that subject matter jurisdiction exists and that removal is proper. See Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). In order to remove a case under § 1442(a)(1), a defendant must meet four requirements:

> (1) [the defendant] is a "person" within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct "acting under" the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are "for, or relating to" an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims.

Id. at 812 (quoting In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia, 790

F.3d 457, 467 (3d Cir. 2015), as amended (June 16, 2015)); Feidt v. Owens Corning Fiberglass Corp., 153 F.3d 124, 127 (3d Cir. 1998)((citing Mesa v. California, 489 U.S. 121, 129 (1989)).

Plaintiff argues only that Defendants cannot prove their federal defense. Despite Plaintiff's apparent concession of three of the four factors required for the Federal Officer Removal Statute to apply, this Court has an obligation to satisfy itself of its subject matter jurisdiction. See Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir.1995); see also FED R. CIV. P. 12(h); 28 U.S.C. § 1447(c). As such, the Court will address each of the four factors.

> *i. MSE is a "Person" Within the Meaning of the Federal Officer Removal Statute*

Plaintiff has not disputed that MSE is a "person" as that term applies to the Federal Officer Removal Statute. § 1442(a)(1) does not itself define the term "person." As such, courts, including the Third Circuit, have looked to § 1 of Title I of the United States Code, which defines "person" to "include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." See, e.g., Papp, 842 F.3d at 812. As an LLC, MSE falls within this definition.

> *ii. MSE was "Acting Under" a Federal Officer or Agency*

Plaintiff does not dispute that MSE was "acting under" a federal officer or agency. "The 'acting under' requirement, like the federal removal statute overall, is to be 'liberally construe[d]' to cover actions that involve "an effort to assist, or to help carry out," a federal officer or agency's duties or tasks. Papp, 842 F. 3d at 812 (quoting Ruppel v. CBS Corp., 701 F.3d 1176, 1181 (7th Cir. 2012) (quoting Watson 551 U.S. 142, 152, (2007)); see also Defender Ass'n,790 F.3d at 468 (construing "acting under" liberally). Although liberally construed, "acting under" a federal officer or agency requires more than simply complying with the terms of a law or regulation. Watson, 551 U.S. at 152.

In other words, where a private actor seeks the benefit of the Federal Officer removal statute, there must be some relationship between the government and the private actor beyond that of "regulator/regulated." Id. at 157. One example of such a relationship is where "the federal government uses a private corporation"—a contractor—"to achieve an end it would have otherwise used its own agents to complete." Papp, 842 F.3d at 812 (citations omitted); see also Defender Ass'n, 790 F.3d at 468-70 (discussing different ways in which an entity might "act under" a federal officer).

MSE "acted under" the Secretary of Defense when it filed reports in JPAS about Plaintiff, an employee with security

clearance. See Stephenson v. Nassif, 160 F. Supp. 3d 884, 887-89 (E.D. Va. 2015). The National Industrial Security Program Operating Manual ("NISPOM"), issued by the Secretary of Defense pursuant to Executive Order[3], requires contractors with access to classified information to report in JPAS "adverse information coming to their attention concerning any of their cleared employees." See NISPOM §1-302(a). Adverse information that defense contractors are required to report includes "any information that negatively reflects on the integrity or character of a cleared employee." This regime requires defense contractors to do more than simply behave in accordance with the law. "The plain language of NISPOM § 1-302(a) is mandatory, and by defining "adverse information" broadly the Department of Defense create[d] a mandatory duty to report broadly." Stephenson, 160 F. Supp. 3d at 889.[4]

---

[3] Exec. Order No. 12,829, 58 Fed. Reg. 3,479 (Jan. 6, 1993).
[4] Plaintiff argues that this reporting duty excludes "reports based on rumor or innuendo," and that accordingly MSE could not have been "acting under" the DOD because the reports about her were not true. This type of on the merits attack "illustrates precisely why federal officer jurisdiction is appropriate here." Stephenson, 160 F. Supp. 3d at 889.

> If the basis for a federal contractor's decision to make a mandatory report under NISPOM § 1-302(a) is going to be open to attack on state tort law grounds, then in the absence of a federal forum the contractors subject to NISPOM might elect not to report in the first instance, which would 'disable federal officials from taking necessary action' to safeguard c lassified information . . . Accordingly, application

13

This reporting structure is the means through which the DOD requires defense contractors to "assist" it in, or help it to "carry out," its duty to protect classified information. Watson, 551 U.S. at 152. Without some mandatory reporting duty such as that created by NISPOM, the DOD would not be able to contract out classified work, and "would need to carry out all activities relating to the protection of classified information internally." Stephenson, 160 F. Supp. 3d at 889. This type of relationship falls squarely within the bounds of the "acting under" requirement of the Federal Officer Removal Statute.

> iii. Plaintiff's Defamation Claim Rests on Acts Done "For of Relating to" a Federal Officer or Agency

"[I]n order to meet the 'for or relating to' requirement, 'it is sufficient for there to be a connection or association between the act in question and the federal office.'" Papp, 842 F.3d at 813 (quoting Defender Ass'n, 790 F.3d at 471 (internal

---

of federal officer jurisdiction to the dispute at hand is consistent with the congressional policy underlying § 1442(a)(1), namely protecting the execution of federal functions in the states by ensuring that persons engaged in federal functions will have access to a federal forum in which to raise federal defenses. Plaintiff's argument essentially creates a defamation exception to federal officer removal by requiring a defendant to prove the truth of his statements before removal is appropriate. There is no basis to conclude that § 1442(a)(1) contemplates or allows such an exception.

Id. at 889 (internal citations omitted).

quotation marks omitted)). This requirement is met here. Plaintiff's defamation claims are based, at least in part, on reports Defendant or its employees entered into JPAS; actions which, as noted above, are required of defense contractors under NISPOM.

*iv. MSE Raises a "Colorable" Federal Defense*

Finally, MSE must raise a "colorable" federal defense to Plaintiff's defamation claims. A "colorable" defense is one that is "legitimate and [could] reasonably be asserted, given the facts presented and the current law." Papp, 842 F.3d at 815 (quoting Colorable Claim, Black's Law Dictionary (10th ed. 2014)); see also Hagen v. Benjamin Foster Co., 739 F.Supp. 2d 770, 782–83 (E.D. Pa. 2010) ("[A] defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial."). MSE asserts that any report submitted by it to JPAS is absolutely privileged, citing Mission1st Group, Inc. v. Filak, Civil Action No. 09-3758, 2010 WL 4974549, *2 (D.N.J. Dec. 2, 2010).

The court in Filak recognized the principle, set forth in Becker v. Philco Corp., 372 F.2d 771, 775-76 (4th Cir.1967), that a government contractor is not liable for defamation of an employee because of reports made to the government pursuant to a

15

governmentally imposed duty. <u>Filak</u>, 2010 WL 4974549, at *2. In its notice of removal, MSE avers that (1) it is a government contractor that (2) made a report to the government (3) pursuant to a duty, and that Plaintiff now seeks to hold it liable for that report. <u>See</u> Notice of Removal ¶ 10-17. Viewed in the light most favorable to Defendant, this is enough to raise a colorable defense.

Having been satisfied that Defendant has made a sufficient showing that it is entitled to the benefit of the Federal Officer Removal Statute, the Court now turns to the issue of timeliness.

### B. <u>Defendant's Removal of this Action was Timely</u>

As the parties agree, nothing in Plaintiff's initial Complaint indicated that this case was removable on the basis of the Federal Officer Removal Statute. Thus, the timeliness of removal is determined pursuant to 28 U.S.C. § 1446(b)(2)(3), which provides that

> [e]xcept as provided in subsection (c)[governing removal based upon diversity jurisdiction], if the case stated by the initial pleading is not removable, a notice of removal may be filed within <u>30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable</u>.

(emphasis added). Accordingly, in order to trigger the thirty day clock for removal, MSE must have received, "through service

16

or otherwise," an amended pleading, motion, order, or "other paper," indicating that the case is removable. Moreover, with regard to written documents submitted to the court or "court related documents," the "relevant test is not what the defendants purportedly knew, but what the[] documents said." Foster v. Mut. Fire, Marine & Inland Ins. Co., 986 F.2d 48, 54 (3d Cir. 1993), rev'd on other grounds, Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) (noting that we look only to the "four corners of the pleading" to see if it "informs the reader, to a substantial degree of specificity, that all elements of federal jurisdiction are present," and ask "not what the defendant knew, but what the relevant document said."))

MSE argues that the clock for removal started running on September 8, 2017, at an oral argument before the state court on motions for summary judgment and reconsideration, and that as such its September 25, 2017 removal was timely. Plaintiff contends that there were at least four triggering events prior to September 8, 2017: (1) June 25, 2015 when Plaintiff, then proceeding pro se, sent a letter to the state court, a copy of which was sent to MSE; (2) October 6, 2016, the date the matter was reinstated to the state court's active docket; (3) October 18, 2016, the date on which the Amended Complaint was filed; or (4) May 15, 2017, the latest date on which MSE may have received

17

Plaintiff's responses to interrogatories, specifically its response to interrogatory 10, which mentions JPAS. The Court is persuaded that September 8, 2017 was the first occasion on which MSE could ascertain that it was being sued for entering a report into JPAS.

Plaintiff's arguments fail for two reasons. First, Plaintiff's defamation claims were dismissed both when she sent the June 25, 2015 letter[5], and when MSE received Plaintiff's responses to interrogatories. On June 25, 2015, Plaintiff's entire pro se Complaint had been dismissed subject to certain conditions and she was instructed by the state court to retain counsel "with the understanding that she may have a claim for unlawful termination." April 24, 2015 Order Granting Dismissal, Notice of Removal Ex. B. Likewise, when MSE received Plaintiff's responses to interrogatories, the defamation claims in Plaintiff's Amended Complaint had been dismissed, and the parties were proceeding on an NJLAD claim. Plaintiff's counsel acknowledged as much on the record at the September 8, 2017 oral argument. In response to the Judge asking "we have a . . . tort case and an [sic] LAD case, isn't that true?," counsel responded

---

[5] For the purposes of this discussion, the Court assumes that Plaintiff's letter was the sort of "other paper" recognized by § 1446. Because the Court finds that the letter did not provide sufficient information to put Plaintiff on notice of its federal defense, however, the Court need not decide this issue.

that "[c]urrently, the only issue in this case is retaliation, discrimination." It is difficult to—and this Court will not—say that Defendant should have ascertained that it may have had a federal defense to a defamation claim that had been dismissed in a case that was proceeding, and appeared set to proceed, under an employment discrimination theory only, and that Plaintiff should have been required to remove on that basis.

Second, while it could be ascertained from the June 25, 2017 letter, the Amended Complaint, and Plaintiff's response to interrogatory 10 that Plaintiff was complaining of McKenna's statements to Plaintiff's prospective employers about the status and merits of a JPAS report, it was not clear that Plaintiff was bringing defamation claims against MSE or anyone else for the entry of the report itself. This is an important distinction, as MSE argues that the JPAS reports themselves, as opposed to statements made about the reports to non-government entities, are privileged. It was not until the September 8, 2017 oral argument that it became ascertainable that Plaintiff was alleging defamation against MSE for the entry of JPAS reports. This is the allegedly privileged conduct for which MSE raises a colorable federal defense, and this is the basis on which the Federal Officer Removal Statute applies. Accordingly, removal on September 25, 2017 was timely.

19

### III. Conclusion

For the foregoing reasons, Plaintiff's motion to remand is DENIED. An Order consistent with this Opinion shall issue on this date.

                                              _s/_Renee Marie Bumb_____
                                              RENÉE MARIE BUMB
                                              United States District Judge

DATED: June 20, 2018