IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

ANNA BARAN,

        Plaintiff,

    v.

ASRC FEDERAL, MISSION
SOLUTIONS, ROSE WELLS, FRANCIS
MCKENNA, SUSAN GOLDBERG,

        Defendants.

Civil No. 17-7425 (RMB/JS)

**OPINION**

**APPEARANCES:**

HAGERTY & BLAND-TULL LAW LLC
By: LaTonya Bland-Tull, Esq.; Robert J. Hagerty, Esq.
523 Haddon Avenue
Collingswood, New Jersey 08108
    Counsel for Plaintiff Anna Baran

LITTLER MENDELSON P.C.
By: William J. Leahy, Esq.; Alexa J. Laborda Nelson, Esq.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, Pennsylvania 19102-1321
    Counsel for Defendant Mission Solutions, LLC

**RENÉE MARIE BUMB**, United States District Judge:

Following four years of litigation – which included almost three years in state court, removal to federal court, and a four-day trial before this Court – the jury spoke:  Defendant Mission Solutions, LLC ("MSE" or "Defendant"), owed its former employee, Plaintiff Anna Baran, $3.5 million in compensatory damages for defaming her by falsely reporting that she had threatened workplace violence.  It is a verdict that Defendant contends must be set aside because Plaintiff's defamation claim was time-barred long before she ever commenced suit.

As odd as it seems, it was not until the close of Plaintiff's case that the Court learned about the parties' longstanding disagreement over the statute of limitations for the defamation claim.  Defendant argues that neither Plaintiff's pleadings nor the evidence presented at trial support a finding that any defamatory conduct occurred within the statute of limitations.  Plaintiff disagrees, contending that a prior state court ruling, which applied the "discovery rule" and ordered Plaintiff's defamation claim to proceed to trial, binds this Court as "law of the case."

With the benefit of post-trial briefing, this Court agrees with Defendant: the defamation claim should have never proceeded to trial.  Plaintiff clearly misstated the law to the state court, precipitating the state court's erroneous application of

2

the discovery rule to a defamation claim. Thus, the state court's unfortunate and incorrect ruling that Plaintiff could present her defamation claim to a jury, which extended the case for years and resulted in the verdict in Plaintiff's favor, was a direct result of Plaintiff's misstatements.

This Court holds that a verdict caused by a legal calamity of Plaintiff's own creation cannot stand. For that reason, Defendant's Renewed Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b), or in the alternative a New Trial pursuant to Fed. R. Civ. P. 59(a)(1) [Dkt. Nos. 59, 60, 67], will be **GRANTED**, and the jury verdict on the defamation claim will be set aside. The Court will direct the entry of judgment on the jury's verdict on the retaliation claim and judgment as a matter of law in favor of Defendant on the defamation claim.

## I.   FACTUAL BACKGROUND

Plaintiff Anna Baran is a former employee of MSE, a military defense contractor that supplies systems engineering, software engineering, integration services and products for mission-critical defense systems. Plaintiff worked for MSE as a Senior Quality Assurance Engineer, a position that required security clearances, until she was terminated for allegedly threatening to shoot three of her supervisors at MSE.

According to Plaintiff's co-workers, Rosemarie Wells and Gaynelle Johnson, Plaintiff had long complained that she was the victim of "bullying" by one of her supervisors, Sue Goldberg. On January 7, 2013, Plaintiff allegedly told Wells, "don't be surprised if this place goes up." Plaintiff allegedly stated that "if [she] had a gun," she would shoot Goldberg, Pat Brencher, and Paul Nocito (her other supervisors). Given Plaintiff's history of complaining about "bullying," Wells became concerned and "very, very upset" about Plaintiff's statements. That same day, Wells reported Plaintiff's comments to MSE's Facility Security Officer Francis McKenna. Soon thereafter, Plaintiff was suspended pending an investigation into her alleged threats. During the investigation, Plaintiff denied making any such threats. Despite Plaintiff's denials, she was arrested and charged with making a terroristic threat on January 9, 2013. A few days later, January 14, 2013, Defendant terminated Plaintiff's employment.

On January 15, 2013, McKenna updated Plaintiff's incident history in the Joint Personnel Adjudication System ("JPAS" or the "JPAS system") to reflect the circumstances surrounding Plaintiff's termination. JPAS functions as the Department of Defense ("DoD") personnel database of record for security clearance processing. According to MSE, McKenna entered this information because federal regulations, reflected in the

National Industrial Security Program Operating Manual

("NISPOM"), require MSE to update JPAS with any "adverse

information coming to their attention concerning any of their

cleared employees." See NISPOM, Section 3, at 1-302(a).  On May

1, 2013, McKenna finalized his earlier incident report about

Plaintiff's termination in JPAS (hereinafter referred to as the

"JPAS Report").  In its entirety, the JPAS Report submitted by

McKenna states:

> "On 1/7/13 MSE employee [Rosemarie Wells] advised FSO
> [Francis McKenna] that MSE employee Anna Baran allegedly
> made statements to [Rose] that she intended to go get a
> rifle and return to MSE and shoot 3 employees. This was
> partly due to a human resources issue in which Baran
> alleged workplace bullying by her supervisor. On 1/8/13
> Baran was sent home on administrative leave while the
> allegations were investigated. The Moorestown, NJ Police
> were notified (incident # 2003-000002810 and they
> interviewed [Rose] as part of their investigation.
> Burlington County Judge Lois Downey charged Baran with
> terroristic threats and as a bail condition ordered that
> Baran be evaluated by the Screening Crisis Intervention
> Program.  This was done at 1AM on 1/9/13. She was
> released at 6AM and taken to the Burlington County Jail
> on the above charge. MSE HR investigation was done from
> 1/9-14/13 and the decision to terminate Baran was made
> on 1/14/13."

MSE Trial Ex. 27.

Although the criminal charges against Plaintiff were

eventually dropped, and her record was expunged, the JPAS Report

does not reflect the final disposition of that matter.  In this

action, Plaintiff contended that MSE's comments about the nature

of her termination in the JPAS Report prevented her from

obtaining a comparable job.[1]  In at least one instance, Plaintiff
claimed that a job offer was rescinded because she was unable to
secure a security clearance due to the description of events in
the JPAS Report.  Consequently, Plaintiff alleged that
Defendant's actions continued to negatively impact her
professional, financial, and emotional well-being.

## II.   **PROCEDURAL HISTORY**

The procedural history of this case is long and
complicated.  It began over four years ago, on January 6, 2015,
when Plaintiff filed her original pro se Complaint against
Defendant in the Superior Court of New Jersey, Law Division,
Burlington County (Case No. BUR-L-53-15).  Throughout the course
of those years, the case had been dismissed, reinstated,
proceeded through discovery, and finally set for trial in state
court – all before it was removed to this Court pursuant to 28
U.S.C. § 1442 (the "Federal Officer Removal Statute") on the eve
of trial in state court.

### A.   *Early Stages in New Jersey State Court*

In her initial pro se Complaint, Plaintiff alleged causes
of action that she described as negligence, malicious
prosecution, intentional and negligence infliction of emotional

---

[1] As discussed infra Section IV.A, at trial, Plaintiff's
defamation claim was based solely upon information contained in
the JPAS report.

distress, defamation, slander, tortious interference, and
retaliation.  On April 24, 2015, the Superior Court granted
Defendant's Motion to Dismiss and dismissed Plaintiff's pro se
Complaint without prejudice, but ordered that: (1) Plaintiff was
required to retain legal counsel by July 1, 2015; (2) Defendant
was required to issue a neutral employment reference; and (3)
Defendant was required to use its best efforts to assist
Plaintiff in obtaining a security clearance. [Dkt. No. 1-2, at
69].

Almost seven months passed before Plaintiff's current
attorneys first entered an appearance on her behalf on November
16, 2015.  Another eight months passed before Plaintiff filed a
Motion to Correct a Clerical Error and Amend Complaint on July
26, 2016, seeking to reinstate the case.  On October 6, 2016,
the Superior Court granted Plaintiff's motion, reinstating the
case and permitting Plaintiff to file an Amended Complaint.
[Dkt. No. 1-2, at 72].

Plaintiff, at this point represented by counsel, filed her
Amended Complaint on October 18, 2016, almost two years after
she originally commenced the case.  Plaintiff's Amended
Complaint asserted four counts against Defendant: (1)
Defamation, Libel and Slander (Count One); (2) Defamation, Libel
and Slander per se (Count Two); (3) Hostile Environment in
violation of the New Jersey Law Against Discrimination ("NJLAD")

7

(Count Three); and (4) Retaliatory Discharge in Violation of the NJLAD (Count Four). See Pl.'s Am. Compl. [Dkt. No. 1-2, at 81-90].

On March 6, 2017, the Superior Court dismissed Counts One, Two, and Three of Plaintiff's Amended Complaint, leaving only Plaintiff's retaliation claim under the NJLAD (Count Four) as the parties proceeded to discovery. [Dkt. No. 1-2, at 73-80]. After the parties conducted depositions and other discovery on Plaintiff's lone remaining retaliation claim, Defendant moved for summary judgment. In response, Plaintiff filed a Motion for Reconsideration of the Superior Court's prior order dismissing the defamation claims.

**B.** ***Motion for Reconsideration***

At oral argument before Superior Court Judge John E. Harrington on September 8, 2017, one month before the scheduled trial, Plaintiff's counsel argued for the first time that her defamation claims should be reinstated because they were premised upon McKenna's statements in the JPAS Report. During oral argument, counsel for Plaintiff conceded that the statements in the JPAS Report were made in 2013 and, thus, would normally be time-barred under New Jersey's one-year statute of limitations for defamation claims. See Superior Court Hearing Transcript, September 8, 2017 ("Superior Court Transcript")[Dkt. No. 59-1, Ex. E], at 13:14-23. However, Plaintiff argued, her

claims should be tolled under the "discovery rule," because Plaintiff did not learn of the existence of the JPAS Report until August 2014, when it impacted her ability to obtain a security clearance. See id., at 13:23-17:16.  In relevant part, Plaintiff's counsel had the following exchange with Judge Harrington:

> **THE COURT**: Okay. From your perspective, what is the operative date that is within the one year? Because it's a hard and fast rule unless you can tell me discovery or some other exception. So, go.
>
> **MS. BLAND-TULL**: Simply put, what Your Honor just said is exactly true. Ms. Baran did not discover this JPAS entry until she began to search for employment.
>
> **THE COURT**: When was that?
>
> **MS. BLAND-TULL**: She was on unemployment for a few months and, then, once she interviewed with L3 in August of 2015, they –
>
> **MR. HAGERTY**: '14.
>
> **MS. BLAND-TULL**: I'm sorry. 2014, excuse me, Your Honor. That is when she discovered and they alerted her to the fact that they were unable to continue or they had to rescind the offer that was forthcoming to her –
>
> **THE COURT**: Because –
>
> **MS.BLAND-TULL**: -- because of this information in the JPAS system. So, that is when she first –
>
> **THE COURT**: August of
>
> **MS. BLAND-TULL**: -- learned of it.
>
> **THE COURT**: All right. So, discovery is August '14. We'll get into all whether it's true or not. August '14. So, if that's the operative -that's the discovery date, it relates back to all these other

circumstances. So the defamation, even though it occurred some time ago, would have been filed within time. <u>Does the discovery rule apply to defamation?</u> I mean, I know it does –

**MS.BLAND-TULL**: <u>Yes</u>, I'm -- I'm sorry.

**THE COURT**: -- with neg -- with negligence and –

**MS. BLAND-TULL**: I -- I was -- my partner was just alerting me to the fact that, because I'm getting my dates mixed up. If it occurred in August of 2014, she was actually within the statute of limitations

**THE COURT**: I know.

**MS. BLAND-TULL**: -- when she filed.

**THE COURT**: I know that. But, -MS.

**BLAND-TULL**: Okay.

**THE COURT**: The occurrence is her being told. But, the action occurred past -- beyond the one year; but, she didn't know about it until within the one year.

[ ]

**THE COURT**: So, if she knew in May of '13, then, obviously, it's too late, correct?

**MS. BLAND-TULL**: Correct.

<u>Id.</u>, at 13:23-15:19; 16:12-14. (emphasis added)

Defendant objected to the applicability of the discovery rule. Judge Harrington, however, held that the discovery rule or the "continuing tort" doctrine served to toll Plaintiff's defamation claim, meaning it accrued in August of 2014 rather than May of 2013. Under Judge Harrington's analysis, Plaintiff's Amended Complaint was also timely because her claims fell within the parameters

10

of her original Complaint. <u>See</u> Superior Court Transcript, at 31:15-32:9. In relevant part, Judge Harrington stated:

> **THE COURT**: <u>I believe the discovery rule applies. I believe that it relates back.</u> I believe that from the very, very beginning, she's been aggrieved about the actions of -- of -- of the employer. The employer did -- now, they should have, could have, would have she would have known that this was going down, would have been something she should have known. That's a different problem for you in the case. What I mean by that is sending it to this --
>
> **MS. BLAND-TULL**: JPAS.
>
> **MR. LEAHY**: The JPAS.
>
> **THE COURT**: J-Pack (sic), yeah. If she's in the business, she would have known that was happening. I think I got her to admit that somewhere along the way when we were talking here. But, I'm -- I'm fairly confident that I can read the complaint to include all tortious acts as continuing tort. They – they committed a second tort. You're allowed to -- to file a complaint for that basis. I'm comfortable with that. That's what I was going to do.

<u>Id.</u> (emphasis added)

Despite Defendant's argument that the defamation claims were barred by the statute of limitations, Judge Harrington granted Plaintiff's Motion for Reconsideration and reinstated Plaintiff's defamation claim. The court explained that his decision was final and that he would allow Plaintiff to present the defamation case to the jury at trial. <u>See</u> Superior Court Transcript, at 36:15-37:3. The court clarified that he was not "finding up-front that there's a defamation claim. <u>I'm simply saying that you can</u>

11

continue to present this to the jury." <u>Id.</u> at 41:24-42:2
(emphasis added).

At the conclusion of oral argument, Judge Harrington
ordered the parties to conduct expedited discovery on the
defamation claim, specifically, the date of Plaintiff's
discovery of the JPAS report, and scheduled trial for
October 2017.  On September 28, 2017, a formal Order was
entered by the Superior Court [Dkt. No. 74], granting
Plaintiff's Motion for Reconsideration, denying Defendant's
Motion for Summary Judgment, and requiring Defendant to
file an Amended Answer.[2]

## C.  *Removal to Federal Court*

Following Judge Harrington's decision to reinstate
Plaintiff's defamation claim, Defendant removed the case to
this Court on September 25, 2017. [<u>See</u> Dkt. No. 1].
Defendant argued that because Plaintiff's defamation claim
was based on statements mandatorily entered into the DoD's
JPAS system, removal was warranted under the Federal
Officer Removal Statute.  Specifically, Defendant contended
that, because it was required to report adverse information

---

[2] Because the September 28, 2017 Order simply formalized Judge
Harrington's holdings made on the record at oral argument on
September 8, 2017, it is assumed to be binding on the parties,
even though it was not entered until after the case had been
removed to this Court on September 25, 2017.

into JPAS, it was entitled to absolute immunity defense under federal law. Furthermore, Defendant argued that removal was timely because it had just learned that the JPAS Report was central to the defamation claims at the September 8, 2017 oral argument, a position that Plaintiff does not dispute. On October 24, 2017, Plaintiff filed a Motion to Remand [Dkt. No. 5] the case back to state court. On June 20, 2018, this Court held that Defendant was entitled to the benefit of the Federal Officer Removal Statute and that removal was timely. [See Dkt. No. 15].

After the Motion for Remand had been resolved, Defendant filed an Amended Answer [Dkt. Nos. 19, 20] in accordance with Judge Harrington's September 28, 2017 Order. Notably, neither Defendant's Amended Answer nor the Final Pre-Trial Order [Dkt. No. 30] included the statute of limitations affirmative defense to the defamation claim, which Judge Harrington had already ruled could be presented at trial. Defendant asserted the statute of limitations affirmative defense, for the first time following removal, in its Trial Brief, which was filed less than a month before trial on February 11, 2019. [See Dkt. No. 38, at 11].

13

## D. *Trial and Jury Verdict*

During a four-day jury trial, from March 4 through March 7, 2019, Plaintiff presented her case that Defendant (1) violated NJLAD by terminating Plaintiff in retaliation for her complaints about discriminatory treatment by her supervisor, Sue Goldberg, and (2) defamed Plaintiff through the incident report entered into the JPAS system. In presenting these claims to the jury, Plaintiff alleged that MSE's stated reason for her termination was pre-textual, and that MSE actually terminated Plaintiff in retaliation for her alleged previous complaints (and threats to file an EEOC complaint) that Sue Goldberg was discriminating against Plaintiff on the basis of her Polish national origin. Plaintiff also alleged that the incident entered into the JPAS system was knowingly false and defamatory.

At the close of Plaintiff's case, Defendant moved for Judgment as a Matter of Law, arguing that Plaintiff's defamation claims should not be allowed to proceed to the jury because (1) they were barred by the statute of limitations, and (2) the statements in the JPAS Report were entitled to absolute immunity. The Court reserved judgment on Defendant's motion and allowed the jury to consider the defamation claim. The jury found that Defendant's statements in the JPAS Report were false and defamatory, and awarded Plaintiff $3.5 million in damages.

Following the announcement of the verdict, Defendant renewed its Motion for a Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b), and moved in the alternative for a New Trial pursuant to Fed. R. Civ. P. 59(a)(1) or a Remittitur of the jury award. Meanwhile, Plaintiff requested that the jury remain empaneled for a trial on punitive damages. In light of the parties scant briefing on the statute of limitations issue prior to trial, the Court determined that more briefing was necessary before deciding the issue. Therefore, pending the outcome of the Motion for Judgment as a Matter of Law, the Court discharged the jury and adjourned the trial on punitive damages.

## III.  LEGAL STANDARD

A motion for judgment as a matter of law may be granted where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "While a district court is permitted to enter judgment as a matter of law at the conclusion of a trial, when it concludes that the evidence is legally insufficient, it is not required to do so. To the contrary, the district courts are, if anything, encouraged to submit the case to the jury, rather than granting such motions." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 405 (2006).

If the Court denies or reserves on a motion for judgment as a matter of law raised during trial, the moving party may renew that motion post-trial under Fed. R. Civ. P. 50(b).  In order to preserve the right to renew a motion for judgment as a matter of law, the moving party must raise a Rule 50(a) motion with "sufficient specificity to put the [nonmovant] on notice" before the case is submitted to the jury. Williams v. Runyon, 130 F.3d 568, 571-72 (3d Cir. 1997).  Rule 50(b) provides that, in deciding a 50(b) motion, the court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

The standard for deciding the renewed motion is the same as the standard for deciding the motion made at trial. Neville Chem. Co. v. Union Carbide, 422 F.2d 1205, 1210 n.5 (3d Cir. 1970), cert. denied, 400 U.S. 826 (1970).  A Rule 50 motion "should only be granted if 'the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." Raiczyk v. Ocean County Veterinary Hospital, 377 F.3d 266, 269 (3d Cir. 2004)(citing Trabal v. Wells Fargo Armored Serv. Corp., 269 F.3d 243, 249 (3d Cir. 2001)).  The key "question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found

its verdict." <u>Johnson v. Campbell</u>, 332 F.3d 199, 204 (3d Cir. 2003)(emphasis in original)(quoting <u>Gomez v. Allegheny Health Servs., Inc.</u>, 71 F.3d 1079, 1083 (3d Cir. 1995)).

"In making this determination, 'the court may not weigh the evidence, determine the credibility of the witnesses, or substitute its version of the facts for the jury's version.'" <u>TransWeb, LLC v. 3M Innovative Properties Co.</u>, 16 F. Supp. 3d 385, 391–92 (D.N.J. 2014) (quoting <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1166 (3d Cir.1993), <u>aff'd</u>, 812 F.3d 1295 (Fed. Cir. 2016)). The Court must "disregard all evidence favorable to the moving party that the jury is not required to believe ... [t]hat is ... give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 151 (2000)(citation and internal quotation marks omitted).

## IV.  <u>DISCUSSION</u>

In its Motion for Judgment as a Matter of Law, Defendant argues that the jury verdict should be set aside because (1) Plaintiff's defamation claim is barred by the statute of limitations one-year period from publication, <u>see</u> <u>Marino v. Westfield Board of Education</u>, 2016 WL 2901706, at *5 (D.N.J. 2016)(<u>citing</u> N.J.S.A. § 2A:14-3) and (2) the contents of the

JPAS Report are protected by absolute immunity. In response, Plaintiff argues, first, that "law of the case" doctrine binds this Court to Judge Harrington's decision that the discovery rule applied to Plaintiff's defamation claim. Second, Plaintiff argues that Defendant waived the statute of limitations defense by failing to assert it in either the Amended Answer or the Final Pre-Trial Order.

## A. *Statute of Limitations for Defamation*

At trial Plaintiff cited the statements in the JPAS Report as the lone evidence supporting her defamation claim.[3] This is consistent with what Plaintiff advised the state court as the basis for her defamation claim. It is undisputed that the JPAS Report was created by McKenna on January 15, 2013 and then finalized on May 1, 2013. Plaintiff, however, did not commence this action until January 6, 2015, over a year and a half after McKenna finalized the JPAS Report.

With the JPAS Report's publication date falling outside New Jersey's one-year statute of limitations period, Plaintiff continues to press the same argument before this Court as she did before Judge Harrington. She argues that her claim was

---

[3] Although Plaintiff had previously contended that her defamation claim was supported by comments from McKenna to a prospective employer, by Plaintiff's own admission, she was unable to present any admissible evidence at trial to support this allegation. See Trial Tr., Mar. 6, 2019, at 642:3-16.

nonetheless timely because she did not find out about the JPAS Report until August 2014. Thus, Plaintiff asserts the discovery date of August 2014 means that her defamation claim was within the one-year statute of limitations when her original Complaint was filed in January 2015. Plaintiff's argument fails before this Court and should have failed before the Superior Court.

This Court can find no legal precedent to apply the discovery rule to a defamation claim in New Jersey, as Plaintiff has argued for some years now. Judge Harrington previously allowed Plaintiff's defamation claim to proceed under a discovery rule theory. The Third Circuit, however, has explicitly stated that under New Jersey law, "the 'discovery rule' cannot extend the limitations period for defamation claims." O'Donnell v. Simon, 362 F. App'x 300, 305 (3d Cir. 2010)(citing Lawrence v. Bauer Publ'g & Printing Ltd., 78 N.J. 371, 396 A.2d 569, 570 (1979)). Indeed, New Jersey courts have repeatedly and consistently held that that the discovery rule cannot, under any circumstances, toll defamation actions. See, e.g., Nuwave Inv. Corp. v. Hyman Beck & Co., 221 N.J. 495, 500–01 (2015)("The statute's clear and unqualified language requires all libel claims to be made within one year of the date of the publication. That language cannot be reconciled with the exception proposed by plaintiffs. In declining to create a judicial discovery rule, we leave amendment of the statute to

19

the Legislature"); <u>Burr v. Newark Morning Ledger Co.</u>, 2018 WL
1955050, at *2 (N.J. Super. Ct. App. Div. Apr. 26, 2018)(holding
that "recent unambiguous precedent dictates" that the discovery
rule is inapplicable to defamation claims); <u>Sivells v. Sam's
Club</u>, 2017 WL 3151246, at *9, n.12 (D.N.J. July 25, 2017)("As to
the discovery rule, it may not apply to defamation claims at
all.").

Second, Plaintiff cannot use the continuing tort doctrine
to restart the statute of limitations each time a potential
employer views the JPAS Report. As noted by the Superior Court
of New Jersey, Appellate Division, "[o]ur courts have never
applied the continuing violation doctrine to defamation claims."
<u>Roberts v. Mintz</u>, 2016 WL 3981128, at *4 (N.J. Super. Ct. App.
Div. July 26, 2016). Furthermore, application of the continuing
tort doctrine under these circumstances would be at odds with
the single publication rule in defamation cases, which provides
that "a statement posted on the internet is deemed only to be
published once for purposes of the statute of limitations; the
limitations period does not restart every time the post is
viewed." <u>Id.</u> at *5(citing <u>Churchill v. State</u>, 378 N.J.Super.
471, 478, 876 A.2d 311 (App.Div.2005)).

Based on the facts in this case, the publication date for
statute of limitations purposes was May 1, 2013: the date
McKenna finalized the JPAS Report within the system. As such,

20

Plaintiff would have needed to assert her defamation claims no later than May 1, 2014. Under the law, these dates cannot be tolled because Plaintiff only found out about the report in August 2014. In short, Plaintiff's defamation claim was already too late when she filed her initial pro se Complaint in January 2015.

**B.    *"Law of the Case" Doctrine***

Alternatively, Plaintiff argues that this Court should abide by Judge Harrington's prior ruling because it has become "law of the case." This Court disagrees. The law of the case doctrine is "an amorphous concept which generally holds that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" In re Caterpillar Inc., 67 F. Supp. 3d 663, 669–70 (D.N.J. 2014)(quoting Arizona v. California, 460 U.S. 605, 618 (1983)). As explained by the Supreme Court, however, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988). The Third Circuit has recognized several "extraordinary circumstances" which would permit revisiting a prior decision.

Such circumstances exist where (1) new evidence is available; (2) a supervening new law has been announced; (3) the order clarifies or corrects an earlier, ambiguous ruling; and (4) where a prior ruling, even if unambiguous, might lead to an unjust result. See In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 439 (3d Cir.2009). Significantly, "the law of the case doctrine does not restrict a court's power but rather governs its exercise of discretion." In re City of Phila. Litig., 158 F.3d 711, 718 (3d Cir. 1998).

The state court allowed Plaintiff's defamation claim to proceed on an erroneous application of the discovery rule. Moreover, the court compounded the error by ordering that the defamation claim would proceed to trial. This Court now exercises its discretion to correct the Superior Court's clearly erroneous application of the discovery rule to a defamation claim, which was precipitated by Plaintiff's misstatement of the law. Although the record in the state court action demonstrates that Defendant objected to the court's finding, Defendant did not prevail. The application of the discovery rule to a defamation claim was "clearly erroneous." To permit the verdict to stand under the law of the case doctrine would result in "manifest injustice."

## C. *Waiver of Defense*

Plaintiff argues that Defendant's statute of limitations defense should be considered waived because Defendant failed to include it in either its Amended Answer or the Final Pre-Trial Order. The Court finds this argument unpersuasive, but certainly questions why Defendant failed to raise this affirmative defense earlier.[4] Indeed, Defendant could have moved to amend its Amended Answer to include the affirmative defense even after the issue had been raised before this Court at trial. See, e.g., Ajax Enters. v. Fay, 2007 WL 766335, at *2 (D.N.J. Mar. 7, 2007)(noting that "amendments may be made during trial, after the close of testimony, or even after judgment" as long as the nonmoving party will not be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered"). Defendant now states that "MSE should be permitted leave to amend and its Answer [] to include the statute of limitations as a defense," [Dkt. No. 67, at 3-4], but

---

[4] The Court notes that at the time Defendant filed its Amended Answer (at the direction of Judge Harrington's September 28, 2017 Order), Defendant presumably believed, based on Judge Harrington's prior holding, that it was precluded from asserting the statute of limitations affirmative defense until trial. To that end, Judge Harrington's ruling would have still been binding upon Defendant, even though the Amended Answer was being filed in this Court, because "the orders or judgments entered by the state court prior to removal should be treated as orders or judgments entered by the district court." Tehan v. Disability Mgmt. Servs., Inc., 111 F. Supp. 2d 542, 547 (D.N.J. 2000).

Defendant has never formally requested this Court's permission to do so, pursuant to Local Civil Rule 15.1.

Although it would have been wise for Defendant amend its Amended Answer, Defendant's failure to amend is not dispositive. Under established circuit law precedent, the failure to include a defense in a responsive pleading does not automatically result in a waiver. As previously noted by the Third Circuit, affirmative defenses, which include the statute of limitations, are not waived if raised at a "pragmatically sufficient time" with no prejudice to the plaintiff. See Balter v. United States, 172 F. App'x 401, 403 (3d Cir. 2006)(citing Eddy v. VI Water & Power Authority, 256 F.3d 204, 209 (3d Cir. 2001)). Moreover, "issues tried by the express or implied consent of the parties are 'treated in all respects as if they had been raised in the pleadings.'" Charpentier v. Godsil, 937 F.2d 859, 864 (3d Cir. 1991)(quoting Prinz v. Greate Bay Casino Corp., 705 F.2d 692, 694 (3d Cir. 1983)). Furthermore, even though the statute of limitations affirmative defense was not asserted in the Final Pre-Trial Order, "[i]t is well established that departure from or adherence to the pretrial order is a matter peculiarly within the discretion of the trial judge." Beissel v. Pittsburgh & Lake Erie R. Co., 801 F.2d 143, 150 (3d Cir. 1986)(citing Berroyer v. Hertz, 672 F.2d 334, 338 (3d Cir. 1982)).

As acknowledged by Plaintiff, Defendant has asserted the statute of limitations defense since the case's time in the Superior Court.  Plaintiff knew of Defendant's statute of limitations objection for almost two years before trial; Plaintiff cannot now claim to be prejudiced by the assertion of this defense.  Plaintiff was aware of the statute of limitations defense, but sought to keep the defamation claim alive based on a misapplication of the discovery rule.  In actuality, by arguing the law of the case, Plaintiff undermines her argument that she had insufficient notice of Defendant's statute of limitations defense:

> **MS. BLAND-TULL:** Yes, your Honor. And, Judge, I know that your Honor may not be bound by the previous ruling of the Superior Court judge in this case, <u>but this has all been the subject of a motion</u>, and the defendant's motion was denied with respect to these issues in Superior Court. So I understand we are in a different jurisdiction now, but I would respectfully argue that there is an issue of the law of the case that applies to this at this time.
>
> **THE COURT:** The judge ruled that the statute of limitations had not transpired on the defamation claim–
>
> **MS. BLAND-TULL:** That is correct, Judge.
>
> **THE COURT:** -- based on the pleading itself.
>
> **MS. BLAND-TULL:** Correct, Judge.

Trial Tr., Mar. 6, 2019, at 557:11-24 (emphasis added).

On the one hand Plaintiff seeks to prevent Defendant from raising the statute of limitations defense (under law of the

case) and on the other hand Plaintiff contends Defendant failed to raise it.  Certainly by raising the statute of limitations defense at the September 2017 oral argument on the Motion for Summary Judgment and Motion for Reconsideration, Defendant put Plaintiff on notice.  A defense that was thoroughly litigated between the parties cannot be said to have been waived. See Stafford v. E.I. Dupont De Nemours, 27 F. App'x 137, 140 (3d Cir. 2002)(holding that when one party met the other's "statute of limitations defense head-on in the District Court, without objection. He had a full and fair opportunity to present his arguments, and he will not now be heard to raise an objection"); see also Balter, 172 F. App'x at 403 (holding that district court had properly considered statute of limitations defense even though it had not been raised in initial motion to dismiss or summary judgment motion, where "defendants raised the statute of limitations defense in their objections to the Magistrate Judge's first Report and Recommendation, and again on remand from the District Court in their answer and second motion to dismiss and for summary judgment" and "[plaintiff] was afforded an opportunity to meet that defense and to present his arguments").

Although Defendant would have been prudent to raise this issue to the Court before trial, this Court is somewhat reluctant to fault Defendant for failing to do so when Judge

26

Harrington had previously ruled the issue was to be tried before a jury. See Superior Court Transcript, at 36:24-37:1(Judge Harrington stating that he "may not let the jury consider" the defamation claim, but that he was "not preventing them from putting together a case to bring to the jury on defamation"). Indeed, it seems that Defendant operated under the belief that Judge Harrington's ruling prevented it from raising the statute of limitations defense again until Plaintiff rested her case at trial. To that end, Defendant repeatedly emphasized to this Court that it was moving for judgment as a matter of law on statute of limitations grounds "now that the record is closed." See Trial Tr., Mar. 7, 2019, at 681:23-684:17 (Defendant arguing that "your Honor is ruling a closed record in this court. Judge Harrington did not rule on a Rule 50 motion. The record is now closed, your Honor is not bound by law of the case"). These factors all lead this Court to conclude that Defendant interpreted Judge Harrington's decision to preclude Defendant from reasserting the statute of limitations defense until a Rule 50 motion at trial.

In this Court's final analysis, it would be perverse to allow Plaintiff to benefit from her own misstatements of the law that caused this legal debacle in the first place. The law could not be clearer: there is no discovery rule exception for defamation claims. The party who was prejudiced was Defendant

who was forced to litigate a time-barred claim for two additional years.[5]  Therefore, this Court exercises its discretion to rule upon Defendant's statute of limitations affirmative defense.

### D.  *Absolute Immunity*

Throughout the course of this litigation, Defendant has leaned heavily on an absolute immunity defense to the defamation claim.  Specifically, Defendant argued that the defamation claim fails because MSE is entitled to absolute immunity for statements made in the JPAS Report.  As noted by Defendant, "courts have granted official immunity to private actors in defamation actions resulting from reports prepared by private industry for government agencies." Gulati v. Zuckerman, 723 F. Supp. 353, 356 (E.D. Pa. 1989)(internal citations omitted).  To this point, MSE argues that government regulations obligated MSE to report "adverse information" about Plaintiff's fitness to hold a security clearance, and that it had no choice but to put the relevant information in the JPAS Report. For that reason, Defendant claims that any information provided in the JPAS Report is entirely privileged.  Perplexingly, Defendant viewed a

---

[5] With the benefit of hindsight, of course it is easy to criticize Defendant for not raising the statute of limitations defense before this Court well before trial.  However, the Court sees little point in doing so now.

finding of absolute immunity as a forgone conclusion. This Court, however, disagrees.

Without binding support from the Third Circuit, Defendant cites to the Fourth Circuit's decision in Becker v. Philco Corp., 372 F.2d 771 (4th Cir. 1967). In Becker, two individuals sued their former employer, a defense contractor, for submitting an allegedly defamatory report to DoD officials, under regulations which required the contractor to submit a report "of any loss, compromise, or suspected compromise of classified information." Id. at 773. Ultimately, the Fourth Circuit held that the employer was absolutely immune from liability for the alleged defamation in the report. The Fourth Circuit stated:

> "[T]he company has no discretion and is mandatorily ordered to report the suspicion immediately. There is no question but that the system of reporting was valid. The obligation could scarcely be couched in more imperious or exacting language. It embraces both true and false accusations, both substantial and insubstantial suggestions, perhaps encompassing even rumors. It demands investigation of them by the company and a report of it to the Defense Department. That is precisely what Philco did. Faithful to the contract, it could have done no less."

Id. at 774 (emphasis added). Although the Becker decision sets a precedent for absolute immunity, even when the information reported includes rumors, this Court finds that the regulation at issue in this case is substantially different from the one examined by the Becker court over fifty years ago. As outlined in Section 3 of the National Industrial Security Program

29

Operating Manual, titled "Reporting Requirements," MSE is bound
to abide by the following guidelines:

> **1-302 Reports to be Submitted to the CSA**
>
> **a. Adverse Information.** Contractors shall report adverse
> information coming to their attention concerning any of
> their cleared employees. <u>Reports based on rumor or
> innuendo should not be made</u>. The subsequent termination
> of employment of an employee does not obviate the
> requirement to submit this report. If the individual is
> employed on a Federal installation, the contractor shall
> furnish a copy of the report and its final disposition
> to the commander or head of the installation.
>
> NOTE: In two court cases, Becker v. Philco and Taglia v.
> Philco (389 U.S. 979, 88 S.Ct. 408, 19 L.Ed.2d 473), the
> U.S. Court of Appeals for the 4th Circuit decided on
> February 6, 1967, that a contractor is not liable for
> defamation of an employee because of reports made to the
> Government under the requirements of this Manual and its
> previous versions.

NISPOM, Section 3, at 1-302(a)(emphasis added). As further

clarified in Appendix C of NISPOM, "Adverse Information" is

defined as "any information that adversely reflects on the

integrity or character of a cleared employee, that suggests that

his or her ability to safeguard classified information may be

impaired, or that his or her access to classified information

clearly may not be in the best interests of national security."

Whereas the <u>Becker</u> court dealt with a reporting requirement

that embraced "both true and false accusations," NISPOM clearly

instructs not to report information "based on rumor or

innuendo." Therefore, to the extent reports within JPAS are

immune from suit, an issue this Court need not decide, that immunity is _qualified_, rather than _absolute_: it does not cover reports based on rumor or innuendo.  To that end, whether a report is based on rumor or innuendo would be a factual finding for a jury.[6]

Following the verdict, this Court asked the parties if they wished to ask the jury a special interrogatory about this issue. Unfortunately, as outlined in the exchange below, the parties precluded the Court from asking the jury if they found that the JPAS Report was based on rumor or innuendo:

> **THE COURT:** The only question is that the legal -- let me just -- I want to make sure I'm not excusing the jury and then regret it later. The legal argument that the defendant is making is that they have a legal obligation to report a threat. Right?
>
> **MR. LEAHY:** Correct, your Honor.
>
> **THE COURT:** If the jury found that a threat was never made does your legal position stand? And should I ask the jury whether they found -- should I issue a special interrogatory asking them whether or not they found that a threat was a made?
>
> (Short pause.)

---

[6] The Court notes that Defendant relies upon _Mission1st Grp., Inc. v. Filak_, 2010 WL 4974549, at *2 (D.N.J. Dec. 2, 2010) to supports its absolute immunity defense.  Indeed, in that case, the court found that an allegedly false report about a cleared employee was entitled to absolute privilege because it was made pursuant to a governmentally imposed duty. _Id._  However, this Court declines to follow that decision, as it did not consider whether the allegedly false report was premised upon "rumor or innuendo," as instructed by the plain text of NISPOM.

**MR. LEAHY:** I was -- what we have just discussed, your Honor, is I don't know that it would change the defense because --

**THE COURT:** Because?

**MR. LEAHY:** -- as you said, anything that is reported to JPAS is absolutely privileged. At the same time if they found that the threat was -- if they found that a threat was in the made --

**THE COURT:** But if it were false -- if they found that a threat was never made and MSE made it up that would not be privileged, would it?

**MR. LEAHY:** It would still be privileged, your Honor, based on the Mission First case. I mean, the privilege is absolute and holds regardless of whether the information was rightly reported. And that's quoting from Mission First which was quoting from Becker. So that is the law of the land, your Honor.

**THE COURT:** If it was made reckless does that matter?

**MR. LEAHY:** It does not matter, your Honor, it is absolute privilege.

**MS. BLAND-TULL:** Your Honor, the NISPOM regulations upon which the case is based specifically say that the immunity does not apply to rumor, innuendo and -- and I forget the other language, but language to the effect of statements that have not been corroborated or don't have a trustworthiness.

**THE COURT:** So do I present the issue of qualified immunity to the jury? Is it not a jury's finding whether or not it was --

**MR. LEAHY:** It is not, your Honor, because this is not a qualified immunity issue, this is absolute privilege issue and so that is a strict legal one, not a jury issue.

**THE COURT:** Well, I guess what I would say is the following: If the parties are incorrect and there should be a question that I should be posing to the jury and I find that my failure to pose the question to the jury prevents me from deciding the issue of

this privilege and I have to order a new trial, I
will. I just am not going to lose the jury -- so I
guess the parties need to be confident about it.
Neither one of you want me to issue a special
interrogatory, I'm just cautiously saying to the
parties that if in the end I determine I should have
and I haven't it would necessitate a new trial. But
that will be what it will be I guess.

Trial Tr., Mar. 7, 2019, at 784:16-786:20.

Although the jury's verdict on the defamation claim
indicates that the jury found that information in the JPAS
Report was false, it does not tell the Court whether the jury
viewed the information as "based on rumor or innuendo."  There
are many reasons why the jury could have found that Defendant's
report was false, without being based on rumor or innuendo.  For
example, the jury could have believed that the JPAS Report
contained false information about Plaintiff, but that Defendant
had a good faith reason for mistakenly accepting the information
as factual.  However, this Court cannot speculate as to the
jury's state of mind.  With the parties unwilling to send a
special interrogatory to the jury, this Court is unable to reach
that issue.  If this Court did not set aside the defamation
verdict on statute of limitations grounds, a new trial would
have been necessary to properly address the immunity issue.
Therefore, in accordance with Fed. R. Civ. P. 50(c)(1), the
Court will conditionally grant Defendant's alternative motion
for a new trial.

**V.  CONCLUSION**

For the foregoing reasons, Defendant's Motion for Judgment as a Matter of Law shall be **GRANTED** and the jury verdict on the defamation claim will be set aside.  The Court will direct the entry of (1) judgment on the jury's verdict on the NJLAD retaliation claim and (2) judgment as a matter of law in favor of Defendant on the defamation claim.

DATED: July 9, 2019

s/Renee Marie Bumb
RENÉE MARIE BUMB
United States District Judge
